420 A.2d 738

**JON M. W., Appellant,**

**v.**

**BRENDA K.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed June 27, 1980.

Reargument Denied Sept. 24, 1980.

52

Vincent A. Colianni, Pittsburgh, for appellant.

John J. Condrige, Pittsburgh, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

On August 21, 1979, the Court of Common Pleas of Allegheny County entered an order granting custody of appellant's two daughters to their mother. This appeal followed:

## I

Brenda and Jon were married in 1969 and had two children, Heather, born in 1970, and Holly, born in 1972. Serious marital difficulties arose and the parties separated in July 1976. Brenda left the home and the children remained with the father. After her departure, Brenda remained in the area to work. In the late fall of 1976, she was involved in a severe automobile accident which resulted in a month of hospitalization. Brenda suffered emotional problems during this period and at one time attempted suicide. Her health improved, however, and she was able to return to work in March 1977. The parties were divorced in January 1978. In September 1978, Brenda married Bryan K. On December 1, 1978, Brenda took the children and refused to return them. The police intervened on December 5, 1978, and returned the children to Jon W. He commenced custody proceedings a few days thereafter.[1]

After the separation, Jon W. continued in his position as a systems engineer for Westinghouse Corporation. Heather and Holly remained with their father in the family home. Their home was located on a cul–de–sac, situated in a family neighborhood, and the girls had many friends close by. Heather and Holly attended a local public school. Although baptized in the Catholic faith, the girls became Methodists and attended church with their father.

## II

It is well settled that the primary concern in child custody cases is the best interests of the child, including his

1. After the parties' separation, the children resided with Jon W. and Brenda had visitation rights. On October 13, 1977, this arrangement was formalized by a provision in a separation agreement which provided that possession of the children should reside with the father. Although the parties dispute the meaning of this provision, we need not consider the arguments advanced by the parties since we base no part of our decision on the separation agreement. See *Commonwealth ex rel. Veihdeffer v. Veihdeffer*, 235 Pa.Super. 447, 344 A.2d 613 (1975) (Court is not bound by a contractual agreement between the parties relating to custody.)

54

physical, intellectual, moral and spiritual well–being. *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Kuntz v. Stackhouse*, 176 Pa.Super. 361, 108 A.2d 73 (1954). Each parent bears the burden of proving that awarding him custody would be in the best interests of the child. *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979); *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). Since the tender years doctrine is no longer recognized, the award must be based on the facts in the record and not on mere presumptions. *Lewis v. Lewis, supra; McGowan v. McGowan*, 248 Pa.Super. 41, 374 A.2d 1306 (1977).

An appellate court's scope of review is very broad in child custody cases. *Commonwealth ex rel. Holschuh v. Holland–Moritz*, 448 Pa. 437, 292 A.2d 380 (1972). *Jones v. Kniess*, 249 Pa.Super. 134, 375 A.2d 795 (1977). While the court cannot nullify or usurp the fact–finding function of the lower court, it is not bound by the deductions or inferences made by the lower court. *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968). After a careful review of the evidence, we are required to make an independent judgment based on the evidence and the testimony. *Sipe v. Shaffer*, 263 Pa.Super. 27, 396 A.2d 1359 (1979); *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978).

### III

We find that the lower court's custody award in the instant case is not supported by the record. The award of Heather and Holly to their mother was based on the following two premises: (1) that the girls would be in a family setting by living with their mother and her husband which was "preferable to being with strangers as baby–sitters despite their best intentions" (Lower ct. op. 5); and (2) that Brenda possessed an "innate ability and knowledge superior to that of the father" on personal matters such as dress,

underclothing, hair style and body grooming. (Lower ct. op. 5).

In rejecting the first premise, we find that Heather and Holly were involved in stable family environment when they lived with their father. The fact that a parent must work may not deprive him of custody if he makes suitable arrangements for his children's care in his absence. *Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978). Our independent review of the record reveals that Jon W. made more than adequate arrangements for the care of Heather and Holly. Neighbors who were well known to the girls and whose children were playmates cared for the girls until Jon W. arrived home from work. Moreover, the court below ignored the fact that Brenda also required child care assistance since she, too, worked full–time. The testimony further indicated that she was uncertain as to what arrangements she would be able to make for their care in her absence. (N.T. 98b, 99b).

We reject the second premise because there is no evidence in the record concerning Brenda's innate ability or superior knowledge regarding personal matters. In merely presuming the mother to be superior to the father, we find that the lower court relied on the tenders years doctrine. As the Supreme Court of Pennsylvania stated in *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290 at 300, 368 A.2d 635 at 640 (1977):

Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of "presumptions". Instead, we believe that our courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case then before the Court.

This court cannot accept a finding which has no competent evidence to support it. *Tomlinson v. Tomlinson, supra.* Since we find the record to be sufficiently complete, we have reviewed the evidence and will enter an order based on the merits. *Pamela J. K. v. Roger D. J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980), opinion by Spaeth, J. (1980).

■  The testimony of those intimately involved in Heather and Holly's daily routine characterized the girls as happy, healthy and well cared for. Heather's teacher stated that she did well in school and was well adjusted. She further indicated that Jon W. was involved in school activities and that he always attended parent–teacher conferences. A neighbor whose daughter played with the girls remarked that they were well–behaved and that Jon W. was a very mature, stable parent. The neighbor who cared for Heather and Holly after school testified that she was close to the girls and that they were happy and secure. In fact, she stated that the children appeared to be better dressed and happier than when their parents lived together. This sentiment was echoed by their babysitter of four years. The babysitter also remarked that Jon W. was a good housekeeper and cook.

We are also influenced by the fact that the father was the primary parental figure for over two and one–half years. This court has often emphasized a child's need for an established parental figure and a known physical environment. *Haraschak v. Haraschak*, 268 Pa.Super. 173, 407 A.2d 886 (1979); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). Indeed, the continued residence of children with one parent has been the controlling factor in certain cases. *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *Commonwealth ex rel. Cutler v. Cutler, supra.*

After a careful and thorough review of the record, we find that the best interest of Heather and Holly will be served by awarding custody to their father. There is no evidence in the record which would convince this court to exchange a stable, healthy situation for one that is uncertain. See *Commonwealth ex rel. Cutler v. Cutler, supra.*

We feel constrained to note with regret the time delay occasioned by the extreme volume of cases pending before The Superior Court of Pennsylvania, particularly as such volume impacts upon custody cases such as this. From the time of their birth in 1970 and 1972, Heather and Holly lived first with both parents and then, following separation in

July 1976, with their father until the Order of the lower court dated August 21, 1979, granting custody of the two girls to the mother. Now, in June of 1980 (following oral argument only two months ago), we return custody to the father. These are difficult cases, perhaps the most difficult of any that a judge decides.

As the lower court said in the opening sentence of his opinion dated August 21, 1979, granting custody to the mother:

"Making a determination of custody of the two minor children in the within proceeding has been most taxing to the court."

The order of the lower court is reversed and custody of Heather and Holly is awarded to Jon W., appellant, subject, however, to the following provisions:

1.  The mother shall have liberal visitation rights to be arranged on an amicable basis or failing an amicable agreement by the parties, then by Order of the Court of Common Pleas of Allegheny County following a hearing on the subject of visitation.

2.  Nothing in this order shall preclude such future proceedings in the lower court or another court having jurisdiction of the parties as Heather and Holly's best interests may require.